**ams**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 07-40048-01-JAR |
| | ) | |
| ANDRE GRAHAM, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER DENYING MOTION TO WITHDRAW PLEA

On March 2, 2009, the Court conducted an evidentiary hearing on defendant's Motion to Withdraw Plea of Guilty (Doc. 55). At that hearing, defendant presented evidence in support of his motion; both defendant and his prior attorney, Jonathan Phelps, testified. The Court took the matter under advisement. The Court has considered the evidence presented at the hearing, the transcript from the plea hearing (Doc. 62), and the parties' briefs and is now prepared to rule. As described more fully below, defendant's motion to withdraw his plea is denied.

*Background*

Defendant pled guilty to Counts 3 and 5 of the Indictment on June 2, 2008. Count 3 charged defendant with possession with intent to distribute approximately 30.33 grams of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and Count 5 charged defendant with possession of a firearm during and in relation to a drug trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A). At the plea hearing, the Court conducted an extensive colloquy with defendant to ensure: that his plea was knowing and voluntary; that he had the benefit and advice of competent and experienced counsel; and that he was aware of the charges, the factual and

evidentiary bases for the charges, his right to a jury trial, and the potential civil rights and sentencing consequences of pleading guilty to Counts 3 and 5 of the Indictment.

Initially, when the Court asked defendant if anyone had pressured him into entering a guilty plea, he stated on the record that he "felt this was the best I could get. . . . And to be quite honest, I don't agree with most of it, but I don't want to spend the next 15 years in jail either."[1] In response, the Court explained to defendant that it was prepared to go through the plea agreement with him in detail and ask about what aspects of the plea agreement he did and did not agree with. The Court explained how it would consider relevant conduct under the sentencing guidelines and that, with respect to the drug charge, the Court considers drug quantities beyond those involved in the specific charge pled to. The Court asked defendant: "you understand that as we sit here now, neither Mr. Phelps nor the prosecutor nor myself can tell you with any certainty what sentence you'll receive? Do you understand that?" Defendant replied, "Yes, ma'am."[2] The court proceeded to explain that "we can tell you what the statutory maximums are under the statute." The Assistant United States Attorney recited the maximum sentence for Count 3 as twenty years and for Count 5 as life, with a mandatory five year minimum sentence to run consecutive to any term of imprisonment on Count 3.[3] The Court asked defendant if he understood these maximum sentences, clarifying for defendant the meaning of "consecutive."

Defendant asked the Court: "What is—what is the minimum that the prosecutor is recommending? . . . I know the minimum for the drug charges, not the drug charges but the gun,

---

[1](Doc. 62 at 8: 4–13.)

[2]*Id.* at 18:12–17.

[3]*Id.* at 19.

is five years.  But for the drug charge what is he recommending?"[4]  The Court responded to

defendant's question as follows:

> The plea agreement states that the government is recommending a
> sentence at the low end of the applicable guideline range.  They're
> not predicting what that range is.  If they did, I would be telling
> you don't rely on that.  Because as we sit here today, none of us
> can really tell you what that is.  But it's largely driven by the, as I
> said, the type of drug or the quantity of the drug.  But there are a
> number of other factors too.[5]

The Court continued, "I want you to understand the Court doesn't have to sentence you to that

recommendation at the low end.  The Court could sentence you to more. . . .  And if I went

higher or didn't follow the recommendation, that would not give you the right to withdraw your

plea.  Do you understand that?"  Defendant responded, "Yes, ma'am."

The Court also discussed the factual basis for the plea to Counts 3 and 5.  Defendant

agreed that the government had the evidence described with regard to the drug charge in Count

3.  On the firearm charge, defendant initially conveyed to the Court that he did not believe the

government could prove that he possessed the firearm in question in order to protect himself in

conjunction with his drug trafficking, but instead suggested that he possessed the gun to protect

his life regardless of the drugs.  Finally, defendant agreed the government had evidence to show

that plaintiff possessed the firearm, at least in part, because of being someone who possessed

drugs and sold drugs.[6]

Toward the end of the plea colloquy, the Court asked defendant if he understood that the

---

[4]*Id.* at 21: 1–8.

[5]*Id.* at 21: 9–19.

[6]*Id.* at 33–35.

motion to suppress filed by Mr. Phelps prior to the plea hearing would be withdrawn and that, as part of the plea agreement, defendant waived his right to appeal anything to do with the investigation, prosecution, or sentence.  Defendant responded "Yes, ma'am."[7]  Defendant proceeded to execute the plea petition with Mr. Phelps and the Court made the requisite findings and accepted defendant's guilty plea to Counts 3 and 5 of the Indictment.

On June 23, 2008, Mr. Phelps filed a motion to withdraw and the Court held a hearing on the motion on June 30, 2008.  The Court granted the motion and soon after Kay Huff was appointed to represent him.  A Presentence Investigation Report ("PSR") was prepared on July 28, 2008,[8] and the sentencing hearing was eventually set to take place March 2, 2009, after three continuances.  But on February 17, 2009, defendant filed the instant motion to withdraw his plea, so the Court conducted a hearing on this motion on March 2, 2009 instead.  In this motion, defendant urges that Mr. Phelps misinformed him as to the possible sentence for his plea; claiming Mr. Phelps advised him that he could expect a 77 month sentence based on his calculation of 60 months for the firearm count and seventeen months for the drug count.  Instead, according to the PSR, defendant is facing 180 months total if he is sentenced at the low-end of the applicable advisory guideline range.  Defendant maintains that if he had been competently informed of the penalty that applied to him by Phelps, he would have taken his chances at trial.

***Discussion***

Under Rule 11(d)(2)(B), a defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for

---

[7](Doc. 62 at 11:10–19; 36:15–23.)

[8]A revised version is dated September 3, 2008.

requesting the withdrawal."  The court considers whether there is a fair and just reason for requesting withdrawal in light of the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.[9]

Defendant argues that withdrawal is appropriate primarily under the fifth factor.  In analyzing the fifth factor, the Court must apply the familiar test for ineffective assistance of counsel, that is (1) whether counsel's performance fell below an objective standard of reasonableness, and (2) whether counsel's performance prejudiced defendant.[10]  "To show prejudice, the defendant must establish that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial."[11]

Defendant contends in his motion, and testified accordingly, that Mr. Phelps told him he was facing a sentence of 77 months' custody under the plea agreement.  Defendant further testified that he was afraid that if he went to trial, his assertion of an insanity defense would require that his custody be served in a mental institution.  Defendant asserts that he would not have pled guilty had he understood his likely sentence to be seventeen years, as the subsequently disclosed PSR had calculated his sentence under the advisory guidelines.

---

[9]*E.g.*, *United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005).

[10]*United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000); *see Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[11]*Gigley*, 213 F.3d at 516–17 (citing *United States v. Kramer*, 168 F.3d 1196, 1201 (10th Cir. 1999)).

Mr. Phelps testified that he was aware that defendant had been diagnosed with Post-Traumatic Stress Disorder and Bi-Polar disorder.  Mr. Phelps decided to file a notice of intent to assert an insanity defense and to introduce expert evidence of a mental condition, which was filed on March 18, 2008.[12]  Mr. Phelps also testified that he never advised defendant that he could expect to serve 77 months under the plea agreement.  Mr. Phelps testified that he told defendant that his sentence estimate was based on a criminal history category III without the adjustment for acceptance of responsibility.  Mr. Phelps testified that he provided defendant with a sentencing estimate of 168-185 months' custody.

At the hearing, the Court admitted a number of documents into evidence that were contained in Mr. Phelps' client file.  Exhibit 1 contains handwritten notes dated April 21, 2008 attached to certain pages from the United States Sentencing Guidelines ("USSG").  Mr. Phelps testified that he provided defendant with pages 1 and the sentencing grid in Exhibit 1—handwritten notes by Phelps calculating a sentencing estimate of "60 + 108-135," and a page from the sentencing table from the USSG with the sentencing ranges of "108-135" and "121-151" circled.  These ranges correspond to Criminal History Category III and Offense Levels of 29 and 30, respectively.  While defendant denies ever receiving these notes, at the very least, they substantiate Mr. Phelps' testimony that he discussed the sentencing consequences of the plea with defendant and that he did not estimate defendant's sentence to be 77 months immediately prior to the plea.[13]

---

[12](Doc. 26, Mar. 18, 2008.)

[13]It appears that defendant's understanding that he was facing a 77 month sentence was based on a letter Mr. Phelps sent to him on May 23, 2007 (Ex. 3), that estimated the guidelines range for each of the six counts charged in the Indictment.  In the letter, he estimated that defendant's sentence for Count 3, based on distribution of only 30.33 grams of cocaine, was 21-27 months.  This corresponds to a sentence estimate based only on the amount of cocaine charged in that count and a criminal history category of III.  When added to the mandatory five-year gun

The Court finds Mr. Phelps' testimony to be credible that he did not advise defendant that he was facing a sentence under the plea agreement of 77 months.  Mr. Phelps' notes substantiate his testimony that he reviewed the pros and cons of the plea agreement with defendant and that he provided him with an objectively reasonable sentencing estimate.  While Phelps overestimated defendant's ultimate offense level and underestimated his criminal history score, his sentence estimate of 168-180 months was not far off from the PSR guidelines range calculation of 180-210 months' custody.  And even though Phelps' predictions were inaccurate, this does not constitute ineffective assistance of counsel.[14]  Moreover, the Court's extensive colloquy with defendant at the plea hearing ensured that defendant understood the maximum sentence he was facing under the plea agreement, the fact that the Court was not bound by any sentencing recommendation made by the government, and most importantly, that he should not rely on any sentencing range that his attorney or the government predicted.  Given these findings, the Court cannot conclude that Mr. Phelps' performance fell below an objective standard of  reasonableness, nor that defendant was prejudiced by any inaccurate estimate provided to him by Phelps.

Defendant also suggests that he felt pressured to plead guilty based on Mr. Phelps' decision to file the "notice of insanity," because Phelps did not discuss the consequences of filing a notice of insanity with him until after it had been filed.  Defendant believed that if he did

charge, this would be 71-77 months.  This letter was written prior to negotiation of a plea agreement with the government, prior to Phelps' April 2008 meeting with defendant to review the plea agreement, and prior to the change of plea hearing, where the Court explained that defendant's relevant conduct, i.e. other drug quantities, could be considered in calculating his offense level.  Indeed, Mr. Phelps' April 2008 notes (Ex. 1) acknowledge that drug quantities would be attributed to defendant in addition to the 30.33 grams of cocaine charged in Count 3 of the Indictment.

[14]*Gigley*, 213 F.3d at 517 n.3 (citing *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)).

not plead guilty, he risked being "locked up" in a mental institution for evaluation and treatment. He testified that Mr. Phelps told him that the plea would allow him to withdraw the "insanity motion."

Phelps testified that he filed the notice of intent to assert an insanity defense because he was aware of defendant's mental health issues and because this defense would be waived if he did not file a notice by the deadline for filing pretrial motions.[15]  Under Rule 12.2(c), upon the government's motion, the Court is required to order the defendant to be examined under 18 U.S.C. § 4242.  Under Rule 12.2(e), if the notice of intent to assert an insanity defense is withdrawn, it is not admissible against the person who gave notice of such intention.  Defendant suggests that Mr. Phelps erroneously filed the notice under Rule 12.2(a), because he testified that he intended to present a "diminished capacity defense," which is not available under federal law,[16] and because it was not a prerequisite to obtain a sentencing departure based on mental disease or defect.[17]  The Court is unable to find that Mr. Phelps' decision to file the Rule 12.2(a) notice constituted ineffective assistance of counsel.  Defendant would have waived his right to raise an insanity defense if he had gone to trial unless this notice was filed.

While the Court acknowledges defendant's fear of confinement in a mental institution, the evidence does not show that Mr. Phelps inaccurately advised defendant that the plea agreement was his only means of avoiding this outcome.  Defendant testified that when he asked Mr. Phelps before the plea hearing about the mental health issue, Mr. Phelps told him that he did not want to dwell on it and hold up the plea hearing, which could cause him to be placed in a

---

[15]Fed. R. Crim. P. 12.2(a).

[16]*See* 18 U.S.C. § 17.

[17]U.S.S.G. § 5K2.13.

psychological institution.  At the plea hearing, Phelps requested that the notice of intent to raise insanity defense be withdrawn; the Court granted the request.  Also, the transcript of the plea hearing belies the contention that Mr. Phelps wanted to avoid addressing the issue of defendant's mental health.  Mr. Phelps told the Court that he intended to file a motion for variance, consistent with the plea agreement, based on diminished capacity.  "As part of the agreement we will be asserting that and we're going to be asserting it to the full extent if the Court will allow it."[18]  Mr. Phelps also sought and was granted permission to attach as Appendix A to the plea petition mental health records for defendant, claiming they "bear[] directly on his competency to enter a plea."  Defendant was silent during this portion of the hearing and did not ask the Court to clarify the confinement issue.  Given the above-referenced evidence, the Court does not find that counsel's assistance on this issue fell below an objective standard of reasonableness, nor that defendant suffered prejudice.

The remaining factors the Court must consider on a motion to withdraw plea counsel against withdrawal.  Plaintiff has not asserted his innocence.  The Court went through both counts to which defendant pled guilty and extensively questioned defendant about whether he agreed that the government had a factual and evidentiary basis for both charges.  He ultimately agreed that the government did have a factual and evidentiary basis for both claims.  There has been an extensive delay between the plea hearing and defendant's motion to withdraw his plea.  Given this delay, allowing defendant to withdraw his plea would prejudice the government as their witnesses are confidential informants and the investigators have moved on to work on other cases.  Even assuming that defendant delayed the motion to withdraw until he was able to review

---

[18](Doc. 62 at 36:2–6.)

the PSR, the initial report was prepared on July 25, 2008 and revised on September 3, 2008, yet defendant waited until February 2009 to file a motion to withdraw.  Defendant's withdrawal would also cause inconvenience to the Court and waste judicial resources.  The Court continued defendant's change of plea hearing that was originally scheduled for April 29, 2008 to June 2, 2008.  After initially expressing concern and disagreement with the factual basis of the plea, the Court conducted a lengthy plea colloquy to ensure that defendant's plea was knowing and voluntary.  Defendant then requested that Mr. Phelps withdraw and the Court appointed new counsel for defendant.  The Court ordered a PSR to be prepared in anticipation of sentencing and granted defendant's numerous motions to continue the sentencing hearing prior to the motion to withdraw his plea.[19]  After nine months, defendant now seeks to withdraw his plea and go to trial.[20]

Finally, the Court finds that defendant's guilty plea was knowing and voluntary.  "[A] plea is valid if it represents a voluntary and intelligent choice among the alternatives open to defendant."[21]  The Court conducted a thorough colloquy at the change of plea hearing to ensure that defendant entered into the plea agreement freely and voluntarily, making clear the consequences of pleading guilty versus going to trial.  The Court repeatedly advised defendant that there was no way to predict his sentence at the plea hearing and that the Court would not be bound by any sentencing estimate provided to him by either Mr. Phelps or the government.  The Court told him that if he had been provided a sentencing estimate, he should not rely upon it.

---

[19](Docs. 46, 49, 52.)

[20]The law is clear that a defendant may not withdraw a guilty plea "because he later feels that he made a poor decision."  *United States v. Jones*, 168 F.3d 1217, 1220 n.1 (10th Cir. 1999).

[21]*United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000).

The Court has considered all of the relevant factors and concludes that defendant is unable to show a fair and just reason for withdrawing his guilty plea.  Accordingly, his motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Withdraw Plea of Guilty (Doc. 55) is denied.

**IT IS SO ORDERED.**


Dated:  <u>March 31, 2009</u>

                  S/ Julie A. Robinson         
                 JULIE A. ROBINSON
                 UNITED STATES DISTRICT JUDGE